FILED
2017 Jul-18  PM 01:30
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
# FOR NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **TAMMY JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LA PETITE ACADEMY, INC.** | ) | **PLAINTIFF DEMANDS** |
| **and FELICIA GIST,** | ) | **TRAIL BY JURY** |
| | ) | |
| **Defendants.** | ) | |

---

## COMPLAINT

---

## JURISDICTION AND VENUE

1.      This Complaint seeks legal and equitable relief to redress Defendants' violations of the Plaintiff's rights secured by the following:

      a.      The Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq*.;

      b.      Alabama Age Discrimination in Employment Act ("AADEA"), Ala. Code § 25-1-20 (1975);

      c.      Civil Rights Acts of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, as amended by the Civil Rights Act of 1991; and

      d.      The laws of the State of Alabama.

2.      Jurisdiction is proper pursuant to the following:

      a.      28 U.S.C. §§ 1331, 1343(a)(3), and 1367;

      b.      The ADEA, 29 U.S.C. § 626(b) and (c)(1); and

      c.      Title VII, 42 U.S.C. § 2000e-5(f).

## PARTIES

3.      Plaintiff Tammy Johnson (hereinafter "Plaintiff" or "Johnson") brings this action based on the illegal employment practices and violations of state law by Defendants La Petite Academy, Inc. and Felicia Gist.   Johnson is a resident of Winston County, Alabama, and is over the age of nineteen (19).   Johnson was employed by La Petite in Decatur, Alabama.

4.      Defendant La Petite Academy, Inc. (hereinafter "Defendant" or "La Petite") is a foreign corporation conducting business in Morgan County, Alabama at all times relevant to this Complaint.   Defendant La Petite operates nearly 500 locations, in 36 states and in the District of Columbia, and has a system-wide capacity to serve more than 10,000 children.   Today the company is the second largest for-profit child care provider in North America.

5.      Defendant La Petite employs over fifteen (15) persons within the meaning of Title VII, 42 U.S.C. § 2000e-(b), and over twenty (20) persons within the meaning of the ADEA, 29 U.S.C. § 630(b).   Defendant La Petite is an

enterprise engaged in interstate commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

6.     Defendant Felicia Gist is a resident of Gwinnett County, Georgia, and is over the age of nineteen (19).   Gist was a District Manager for La Petite over the Decatur, Alabama facility and was Johnson's direct supervisor at all times relevant to this Complaint.

## VENUE

7.     Venue lies within the Northern District of Alabama under 28 U.S.C. § 1391.

## NATURE OF ACTION

8.     Johnson brings this action to redress Defendants' unlawful employment practices, including discrimination, harassment, retaliation, and violations of Alabama state law.

9.     Johnson seeks reinstatement, declaratory and injunctive relief, back pay, front pay, an award of compensatory, punitive, and liquidated damages, mental anguish damages, attorneys' fees, costs, interest, and any and all such other relief the trier of fact may assess.

## ADMINISTRATIVE PROCEDURES

10.     On November 16, 2016, within 180 days of learning of the acts of

discrimination of which she complains, Johnson filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC"), Charge No. 420-2017-00484.   **(Attached herein as Exhibit A).**

11.    The EEOC issued Johnson a Notice of Right to Sue on April 20, 2017 that was received on April 24, 2017.    **(Attached herein as Exhibit B).**

12.    Johnson has exhausted all administrative remedies and satisfied all prerequisites for bringing this action.

## STATEMENT OF FACTS

13.    Johnson is a Caucasian female, fifty (50) years of age.

14.    Johnson began her career with La Petite as Academy Director on two (2) separate occasions.   Johnson worked for the Hoover, Alabama La Petite for two (2) years and then for the Decatur, Alabama La Petite for six (6) months.   For approximately eighteen (18) months between employment of the two (2) facilities, Johnson stayed home to care for her children.

15.    In January 2016, Johnson was rehired by Priscilla Kimball (hereinafter "Kimball"), District Manager, and Cindy Lenholf (hereinafter "Lenholf"), Vice President of La Petite.   Johnson was hired to work as the Academy Director for the Decatur, Alabama facility.   In approximately February or March of 2016, Felicia Gist (hereinafter "Gist") became District Manager for Alabama, replacing Kimball.

4

16.    As Director, Johnson managed all employees and was directly responsible for the well-being of approximately one hundred (100) children at La Petite's Decatur, Alabama facility.   Johnson continued in this position until her constructive discharge on June 27, 2016.

17.    As Director, Johnson's job duties included supervising and operating the daycare facility, ensuring an educational, caring, and safe environment for the children and parents, monitoring and ensuring the well-being of children, facility staff development and training, and achieving profitability for the company.

18.    When Johnson assumed the Academy Director position in Decatur, the facility was classified as "in distress" because the enrollment numbers and business operations were deficient.   There were approximately thirty (30) children enrolled in the daycare in January 2016 when Johnson began her employment.   There were many operational issues at the facility that Johnson had to immediately work hard to address.   Within a few months, the enrollment was at eighty (80) to eighty-five (85) children.   The facility started meeting all budget numbers and was deemed profitable under Johnson's leadership within this short timeframe.

19.    One employee at the Decatur facility, Chante' Pettus (hereinafter "Pettus"), created problems for some of the teachers and parents.   Pettus was hostile in her interactions with the staff and with the parents.   Johnson quickly assessed

that Pettus was one of the reasons the enrollment numbers were so low at the facility when Johnson was hired.  Pettus was also the cause of low staff morale and retention.

20.    While Kimball was District Manager, she and Johnson worked to improve Pettus's performance.  That changed when Gist became Johnson's supervisor in February 2016.  Both Gist and Pettus are African-American females, and Johnson is Caucasian.  Pettus is significantly younger than Johnson.  Race and/or age immediately became an issue with Gist.  Gist did not believe information that Johnson provided to her and would instead seek out Pettus for information regarding the day care.

21.    Gist began visiting the center once or twice a week and would ignore Johnson as the Director and go to Pettus, instead.  Pettus was Johnson's Assistant and Program Director.  Pettus used this opportunity to undermine and complain about Johnson.  Gist became increasingly critical of Johnson and her performance and was openly hostile towards her.

22.    Pettus's conduct and how she addressed and interacted with the staff were causing teachers to leave the facility.  Pettus was condescending and demeaning when she spoke to the teachers and parents.  The teachers complained, but Gist wound not believe them or Johnson.  Gist took Pettus's word over the

6

staff's and Johnson's.   When someone would complain about the constant issues with Pettus, Gist refused to investigate or take any corrective action.   Gist's inaction enabled Pettus to create a hostile work environment, to which she, herself, contributed.   It became apparent to Johnson that Gist intentionally favored Pettus over Johnson in all discussions regarding the facility.

23.    Gist and Pettus worked together to create an intolerable and hostile work environment to set Johnson up for failure and termination.   Johnson received absolutely no leadership or response from Gist to be successful in her position as Director.

24.    Gist called a meeting among the Academy Directors in Birmingham, Alabama.   Upon Johnson's arrival, Gist told the Directors that they would have a conference call after the meeting.   During a break, Gist sent the Directors information regarding the conference call.   After the break, Gist asked if everyone had received the information.   Johnson spoke up and said that she had not received it.   Gist told Johnson that the call was not for her and that she would call Johnson later.   Gist never called Johnson.   Gist intentionally excluded Johnson from receiving information pertinent to her duties as Academy Director.

25.    Johnson complained to Brandy LaJune in Human Resources and to Cindy Lenholf, Vice President, about Gist's and Pettus's discrimination and her

hostile work environment.   Despite Johnson's complaints, Defendant La Petite

failed to investigate or remedy Johnson's hostile work environment.

26.    During this time period, the district had three Caucasian Directors.   To

date all three Caucasian directors have been terminated or left the facility due to

Gist's discriminatory and harassing treatment.

27.    As a result of the constant discrimination and hostility, Johnson

requested time off to deal with stress.   Johnson also had two family members with

serious health conditions that she was trying to assist with transportation to and from

medical appointments.   Gist was aware of Johnson's need to take occasional leave

for these appointments.

28.    Even though Johnson had worked forty (40) to sixty (60) hours a week,

Gist would require Johnson to take a full day of vacation to assist her family in going

to doctor appointments, even though she did not need to take a full day.   However

on the required vacation day, Johnson was bombarded with telephone calls, texts,

and emails from Gist about work issues that were not an emergency situation.   At

the same time, information that was important for Johnson to immediately know

would be withheld by Gist and Pettus.   When Johnson would arrive back to work,

Pettus would have Johnson's desk piled high with notes and work that Pettus insisted

Johnson complete, even though she was the assistant and in charge of the facility

while Johnson was away.

29.    Johnson requested a week-and-a-half off to address a family medical issue and was granted an eight (8)-day unpaid leave.   During the leave, Gist ordered Johnson to travel to Atlanta for training for two (2) days.   Also during Johnson's leave, employees of the facility, and in particular Pettus, were constantly calling Johnson with questions and issues that required Johnson's attention.    Upon Johnson's return, Johnson tried to address the issue of being on call while off and coming back to stacks of work with Gist and Pettus.   Gist loudly interrupted Johnson and said Johnson did not understand--it was a harder for Gist and Pettus in their roles because they are African-American women.   Johnson did not understand Gist's comment, nor the tone and context in which it was delivered, and perceived that Gist was discounting Johnson's complaints and singling her out for being Caucasian.

30.    Additionally, when Johnson would arrive back to work from being off, she would find her personal items, such as picture frames with family pictures, broken or stuffed into a desk drawer.   Pettus shared Johnson's office with Johnson while Johnson was away.

31.    The Decatur facility had an iPad for work use.   The facilities were implementing a new I-Care system, which required large amounts of detailed data to

be entered into the program relating to the operation of the facility.   Johnson took the iPad home one night to work on entering the information that needed to be entered into the new system.   Gist contacted Johnson's cell phone and demanded that she immediately return the iPad to the facility.   Gist told Johnson the iPad had a tracker, in an accusatory tone, as if Johnson was attempting to steal it.   Johnson returned the iPad that evening to find a broken picture frame of her family on her desk, one of about three (3) times Gist found her personal items broken or stuffed into her desk drawer.

32.   Johnson continued to complain to Human Resources and management about the treatment she was receiving from Gist and Pettus.   Gist discounted Johnson's complaints and told her to keep them to herself.   Defendant La Petite did nothing to address or cure Johnson's hostile work environment complaints. Defendant instead subjected Johnson to continued and escalating harassment because of her race and in retaliation for her complaints of discrimination and harassment.

33.   Defendant constructively discharged Johnson's employment on June 27, 2016, when Johnson was left with no recourse other than to resign under duress due to the un-remedied discrimination, harassment, and retaliation.

34.   Defendant did not treat African-American or younger employees in the

same adverse and discriminatory manner as Johnson and other Caucasian employees.

35.     As a result of La Petite's unlawful actions, Johnson suffered lost wages and employment benefits, loss of employment opportunity, emotional distress, and physical pain and suffering.  Johnson additionally seeks injunctive relief in the form of reinstatement and an order prohibiting Defendant from further discrimination, harassment, and retaliation.

## COUNT ONE

### TITLE VII - RACE DISCRIMINATION, HARASSMENT, AND RETALIATION AGAINST DEFENDANT LA PETITE

36.     Johnson re-alleges paragraphs 10-35 as if fully set forth herein.

37.     This is a claim against Defendant to redress the unlawful employment practices of race discrimination, harassment, and retaliation protected by Title VII of the Civil Rights Act of 1964, as amended.

38.     Johnson is Caucasian.

39.     Johnson was at all times qualified to perform her job duties as Academy Director.

40.     Defendant treated Johnson differently and adversely in the terms, conditions, and pay in her employment compared to Johnson's African-American

coworkers.

41.    Johnson's work environment was racially hostile and harassing. Defendant required Johnson to work in a racially hostile environment filled with intimidation and ridicule by her African-American supervisor Gist and coworker Pettus.

42.    Defendant's unlawful conduct was motivated by Johnson's race.

43.    Johnson voiced complaints about the racial discrimination and harassment to her managers and La Petite's Human Resources Office.

44.    Defendant failed to investigate or remedy Johnson's complaints.

45.    Johnson suffered retaliation in the form of harassment and unfair discipline, culminating in her constructive discharge on June 27, 2016.

46.    La Petite applied its progressive discipline policy in a discriminatory manner.

47.    As a proximate result of Defendant's unlawful discrimination, harassment, and retaliation, Johnson suffered financial loss, loss of employment, loss of benefits, loss of job opportunity, humiliation, emotional distress, and trauma.

48.    Johnson seeks declaratory and injunctive relief, an award of lost back pay and front pay, compensatory and punitive damages, costs, interest, attorneys' fees, and any and all such other relief the trier of fact may assess.

## COUNT TWO

### ADEA AND AADEA - AGE DISCRIMINATION, HARASSMENT, AND RETALIATION AGAINST DEFENDANT LA PETITE

49.     Johnson re-alleges paragraphs 10-35 as if fully set forth herein.

50.     This Count seeks to redress the unlawful employment practices of age discrimination and harassment by Defendant's agents and employees and ratified by Defendant, as protected by the ADEA and AADEA prohibiting age discrimination in the workplace.

51.     Johnson is fifty (50) years of age.

52.     Johnson is qualified to perform the job duties of Academy Director and has conducted those duties and other duties of numerous other positions in a satisfactory manner.

53.     La Petite subjected Johnson to intentional discriminatory treatment based on her age.

54.     Johnson's work environment was hostile and harassing based on age. Defendant required Johnson to work in a hostile environment filled with intimidation and ridicule by her younger supervisor and coworker.

55.     Defendant's unlawful conduct was based on Johnson's age.

56.     Johnson voiced complaints about age discrimination and harassment to

13

her managers and La Petite's Human Resources Office.   Defendant failed to address Johnson's complaints.

57.    Johnson complained about discrimination and harassment and suffered retaliation in the form of further harassment and unfair discipline, culminating in her constructive discharge on June 27, 2016.

58.    La Petite applied its progressive discipline policy in a discriminatory manner.

59.    La Petite subjected Johnson to different terms and conditions of employment than her younger co-workers.

60.    La Petite treated younger employees with less experience and seniority more favorably than Johnson and did not subject younger employees to discrimination or a hostile work environment with respect to the terms, conditions, or pay in their employment.

61.    La Petite did not subject similarly-situated younger employees to disciplinary action or constructive discharge and instead offered reassignment and promotion.

62.    Defendant has a policy that prohibits workplace age discrimination; however, Defendant willfully violated its own policies and the state and federal laws that prohibit discrimination.

63.    As a proximate result of Defendant's unlawful discrimination, harassment, and retaliation, Johnson suffered financial loss, loss of employment, loss of benefits, loss of job opportunity, humiliation, emotional distress, and trauma.

64.    Johnson seeks declaratory and injunctive relief, an award of lost back pay and front pay, compensatory and punitive damages, liquidated damages, costs, interest, attorneys' fees, and any and all such other relief the trier of fact may assess.

## COUNT THREE

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS

65.    Johnson re-alleges paragraphs 13-64 as if fully set forth herein.

66.    This is a claim against Defendant arising out of the laws of the State of Alabama prohibiting the intentional infliction of emotional distress.

67.    Defendant's adverse treatment of Johnson, in particular its subjection of her to severe, degrading, and humiliating harassment despite her continued complaints, was outrageous, extreme, and beyond the bounds of decency.

68.    Defendant's agents and members of management made disparaging comments about Johnson and her performance to others, regarding her discipline and termination, which damaged Johnson's reputation and harmed her ability to seek other employment, including future employment with Defendant.

69.    Defendant's conduct was intentional, willful, and employed to inflict

severe emotional distress upon Johnson.

70.     Defendant's conduct is not condoned by society and should not go unpunished.

71.     Johnson seeks declaratory and injunctive relief, award of lost employment benefits and wages, reinstatement, back pay, front pay, compensatory damages, punitive damages, costs, interest, attorneys' fees and any and all such other relied the trier of fact may assess.

## COUNT FOUR

### INVASION OF PRIVACY
### AGAINST ALL DEFENDANTS

72.     Johnson re-alleges 13-71 as if fully set out herein.

73.     This is a claim against Defendant for invasion of Johnson's right to privacy based on the laws of the State of Alabama.

74.     Defendant's egregious, un-remedied harassment violated and invaded Johnson's physical and emotional sanctum.

75.     Defendant's false statements about Johnson's performance, and publicized degradation of Johnson in her role as facility Director, placed Johnson in a false light to others.

76.     Defendant's unlawful conduct proximately caused Johnson to suffer embarrassment, humiliation, mental anguish, physical pain and suffering, loss of

reputation, loss of career opportunity, and lost pay and benefits.

77.     Johnson seeks declaratory and injunctive relief, reinstatement, award of compensatory and punitive damages, mental anguish, costs, interest, attorneys' fees, and any and all such other relief the trier of fact may assess.

## COUNT FIVE

### INTERFERENCE WITH CONTRACTUAL
### OR BUSINESS RELATIONS
### AGAINST ALL DEFENDANTS

78.     Johnson re-alleges paragraphs 13-77 as if fully set forth herein.

79.     Johnson had established business relationships with her coworkers and clients.

80.     Defendant had knowledge of these business relationships and sought to intentionally damage them to Johnson's financial, physical, and emotional detriment.

81.     Johnson was damaged as a result of Defendant's intentional interference.

82.     Defendant's unlawful conduct proximately caused Johnson to suffer embarrassment, humiliation, mental anguish, physical pain and suffering, loss of reputation, loss of career opportunity, and lost pay and benefits.

83.     Johnson seeks declaratory and injunctive relief, reinstatement, award of

compensatory and punitive damages, mental anguish, costs, interest, attorneys' fees, and any and all such other relief the trier of fact may assess.

## COUNT SIX

### NEGLIGENT AND WANTON HIRING, TRAINING, SUPERVISION AND RETENTION AGAINST DEFENDANT LA PETITE

84.    Johnson re-alleges paragraphs 13-83 as if fully set forth herein.

85.    This is a claim arising under the laws of the State of Alabama to redress the negligent and wanton hiring, training, supervision, and retention of Defendant's employees.

86.    Defendant had a duty to provide a reasonably safe, non-hostile, and non-discriminatory work environment to Johnson and other employees in the protected categories of age and race.  Defendant had actual notice of the actions complained of by Johnson.

87.    Defendant, having such knowledge, negligently and wantonly hired and/or failed to train, discipline, or terminate those employees who actively discriminated, harassed, retaliated, and conspired against Johnson on an ongoing basis, failing to protect Johnson from further injury.

88.    Defendant failed to administer, communicate, or train its managers and employees on policies against discrimination and harassment or otherwise eradicate

behavior that created a hostile work environment.

89.     Johnson's working conditions created by Defendant were adverse and hostile and intended to cause Johnson financial, physical, and emotional harm.

90.     Defendant's unlawful conduct proximately caused Johnson to suffer embarrassment, humiliation, mental anguish, physical pain and suffering, loss of reputation, loss of career opportunity, and lost pay and benefits.

91.     Johnson seeks declaratory and injunctive relief, reinstatement, award of compensatory and punitive damages, mental anguish, costs, interest, attorneys' fees, and any and all such other relief the trier of fact may assess.

WHEREFORE, Plaintiff respectfully requests this Court:

A.     Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it from engaging further in discriminatory treatment on the basis of age, race, and retaliation based on protected activity;

B.     Order Defendant to institute and carry out policies, practices, and programs that provide equal provisions and employment opportunities for all employees, and which eradicate the efforts of past and present unlawful employment practices, including implementing a policy against age, race, and retaliation for engaging in protected activities;

C.     Order Defendant to make Plaintiff whole by providing back pay, front pay, reinstatement, interest, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, compensatory, punitive, and liquidated damages;

D.     Award Plaintiff compensatory, punitive, and liquidated damages;

E.     Award Plaintiff costs and expenses herein, including reasonable attorneys' fees; and

F.     Award such other and further relief this Court deems necessary and proper.

### PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL ISSUES

/s/ *Sonya C. Edwards*
Alicia K. Haynes (ASB-8237-E23A)
Sonya C. Edwards (ASB-8848-S73E)
Attorneys for Plaintiff

**OF COUNSEL:**

**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, Alabama   35226
Phone:   (205) 879-0377
Fax:   (205) 879-3572
E-mail:   akhaynes@haynes-haynes.com
E-mail:   scedwards@haynes-haynes.com

**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL:**

La Petite Academy, Inc.
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104

Felicia Gist
1192 Creek Top Road
Loganville GA 30052-8698